[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
OPINION
Defendant-Appellant, James Webb appeals from an order finding him in contempt by the Common Pleas Court of Marion County for violation of the trial court's orders by failing to pay spousal support, by transferring real estate, and by cashing a tax refund check.
Procedurally, the parties were married in 1960 and Carolyn Webb, Plaintiff-Appellee, filed for divorce on May 4, 1994. On May 5, 1994, an ex parte order was filed that restrained the parties from selling, disposing, removing or encumbering any of the parties' property. On May 27, 1994, a temporary order of spousal support ordered James to pay Carolyn $1,831 per month.
Final divorce hearings were held and the trial court adopted the April 12, 1995 report and recommendations of the referee. A judgment entry was filed on April 18, 1995 which granted the divorce of the parties and distributed the parties' assets and liabilities. No spousal support was ordered.
The trial court, however, allowed Carolyn to file objections to the referee's report and recommendations on August 2, 1995.[1] On September 15, 1995, the trial court issued interim orders finding that the final judgment of April 18, 1995 had been automatically stayed and reinstating the temporary orders of May 27, 1994 which had ordered James to pay Carolyn spousal support in the amount of $1,831 per month among various other duties.
On January 16, 1996, the trial court ruled on the objections and adopted the April 18, 1995 decree of divorce with one modification pertaining to real estate. No spousal support was awarded in the decree. Carolyn appealed the trial court's decision and asked for a stay of the decree of divorce. The stay was denied. We reversed and remanded the matter to the trial court with specific instructions for the trial court to revise the property distribution of the parties and consider the issue of spousal support. See Webb v. Webb (June 28, 1996), Marion App. No. 9-96-6, unreported.
While on remand, on September 5, 1996, Carolyn filed a motion for the reinstatement of the May 27, 1994 temporary orders. On January 16, 1997, the magistrate stated that the temporary orders filed on May 27, 1994 had continuously remained in effect from May 27, 1994. The magistrate did modify the amount of spousal support to $1,592 per month effective January 15, 1997. James requested the trial court to set aside this order, but the trial court denied his motion.
Carolyn then filed a motion for contempt against James. On June 11, 1998, the trial court found James in contempt for violation of the court's temporary orders to pay spousal support. James was sentenced to three days in the Marion County Jail with the option that he may purge the contempt by paying $100 per week, plus the current spousal support order, until the arrearage is completely liquidated. James was also ordered to pay $500 to Carolyn for attorney fees and court costs. In addition, James was found in contempt for transferring real estate and for cashing a tax refund check, but no sanctions were ordered.
James now sets forth four assignments of error.
 ASSIGNMENT OF ERROR NO. I The trial court abused its discretion in finding the Defendant-Appellant in contempt of Court for failing to pay spousal support after the lower court reinstated its temporary orders, modified as to the monthly award of spousal support, retroactively without first considering the factors set out by Ohio Revised Code Section 3105.18. [sic]
Under this assignment of error, James argues that the trial court erred in finding him in contempt when it determined that the temporary spousal support order existed continuously from May 27, 1994. As we find merit in James's argument, we sustain this assignment of error.
Civil contempt is defined as "that which exists in failing to do something ordered by the court in a civil action for the benefit of the opposing party." Marden v. Marden (1996),108 Ohio App.3d 568, 570, citing Beach v.Beach (1955), 99 Ohio App. 428, 431. We review a contempt finding under an abuse of discretion standard. Dozer v. Dozer (1993), 88 Ohio App.3d 296, 302. An appellate court must consider the propriety of the underlying order when it considers the order of contempt. In re Appeal ofSmith v. Chester Twp. Bd. of Trustees (1979), 60 Ohio St.2d 13, paragraph one of the syllabus.
First, we find that the temporary order of spousal support did not merge into the April 18, 1995 divorce decree. The trial court adopted the April 12, 1995 report and recommendations of the referee prior to the fourteen days given to parties to file objections. Civ.R. 53(E)(3)(a). Thus, even after the trial court entered a divorce decree on April 18, 1995, the parties could have still filed objections to that decree and the trial court could have modified the divorce decree. As such, we find that the April 18, 1995 divorce decree was not a final divorce decree in this case. An order adjudicating fewer than all the claims or parties shall not terminate the action as to any of the claims or parties.Stewart v. Midwestern Indemn. Co. (1989), 45 Ohio St.3d 124. A final decree is one which determines the whole case and reserves nothing for future determination. R.C. 2505.02; Stackhouse v.Stackhouse (Nov. 8, 1996), Montgomery App. No. 15710, unreported. In this case, the parties could have, and Carolyn did, file objections to the referee's report and recommendation. The trial court did modify the April 18, 1995 divorce decree on January 16, 1996 when it entered its judgment on the objections filed by Carolyn. We find that the temporary orders did not merge into the April 18, 1995 divorce decree as it was not final.
In addition, the April 18, 1995 execution on the divorce decree was automatically stayed on the filing of objections pursuant to Civ.R. 53(E)(4)(6). Accordingly, the May 27, 1994 temporary orders remained in effect and did not merge into the April 18, 1995 divorce decree until the decree was final on January 16, 1996. As such, prior to the final decree of divorce, James was obligated to pay temporary spousal support from May 27, 1994 to January 16, 1996.
As we stated in the previous appeal in this matter, temporary orders merge into the final divorce decree. Colom v. Colom
(1979), 58 Ohio St.2d 245. The right to enforce such orders does not extend beyond the decree unless the orders have been reduced to a separate judgment or placed in the final decree. Id.
However, in her appeal, we sustained Carolyn's objection that the trial court should have considered the arrearages due to her prior to the final divorce decree. Webb, supra. As such, we find that on remand, the trial court could properly consider the amount due in temporary spousal support from May 27, 1994, when the temporary spousal support was ordered, until January 16, 1996, when the final divorce decree was journalized.
Second, we find that Carolyn properly requested temporary spousal support following our remand. While on our previous remand, Carolyn filed a motion for the reinstatement of the temporary spousal support orders. On January 16, 1997, the magistrate found that the temporary orders filed on May 27, 1994 had continuously remained in effect since the date on which they were filed. The magistrate modified the amount of spousal support to $1,592 per month effective January 15, 1997. James objected to the this order, but the trial court denied his objections.
As we previously stated, we agree with James that it is well-established that temporary orders merge into the final decree of divorce pursuant to Colom, supra. We also find Armstrong v.Marathon Oil Co. (1987), 32 Ohio St.3d 397 to be of guidance in this matter.
 It is basic law that an "action of the Court of Appeals in reversing the cause and remanding the case to the Court of Common Pleas for further proceedings has the effect of reinstating the cause to the Court of Common Pleas in statu quo ante. The cause is reinstated on the docket of the court below in precisely the same condition that obtained before the action that resulted in the appeal and reversal." (Emphasis added.) 5 Ohio Jurisprudence 3d (1978) 426, Appellate Review, Section 717. Furthermore, this court has specifically held that upon remand from an appellate court the lower court is required to proceed from the point at which the error occurred. State ex rel. Stevenson v. Murray
(1982), 69 Ohio St.2d 112, 113.
 Armstrong, 32 Ohio St.3d at 418. See, also, White v. White (May 15, 1992), Trumbell App. No. 91-T-4526, unreported.
In Webb v. Webb (June 28, 1996), Marion App. No. 9-96-6, unreported, we remanded this matter with specific instructions for the trial court to consider the property distribution of the parties and consider the issue of spousal support. Following the logic in Armstrong, we find that the matter was placed on the docket for the trial court to review the parties' assets and liabilities upon remand. The final divorce decree still existed subject to property modification by the trial court. As the final divorce decree continued to exist following our remand, we find that the temporary order for James to pay Carolyn spousal support had merged into that final divorce decree. Colom, supra.
The trial court could not have reinstated the previous temporary spousal support after the divorce of the parties as it was without authority to make such an order. Rahm v. Rahm (1974),39 Ohio App.2d 74, 80. Accordingly, James did not become liable to Carolyn for spousal support following our remand until Carolyn requested a new order of temporary spousal support. Carolyn could request temporary spousal support following our remand based upon our order for the trial court to consider spousal support. SeeNolan v. Nolan (1984), 11 Ohio St.3d 1, 3 (holding that a trial court is compelled to follow the mandates of reviewing courts).Cicchini v. Cicchini (Apr. 29, 1991), Stark App. No. CA-8243, unreported, as cited by James, is distinguishable from the case before us. In Cicchini, the Fifth Appellate District held the following: "We find no authority for an order compelling one divorced person to support another temporarily after a divorce and during the pendency of a remand for further proceedings as to economic issues." From the brief opinion in Cicchini, we are unable to determine whether the court of appeals had ordered the trial court to consider the issue of spousal support upon remand. Accordingly, we find James's reliance on Cicchini unpersuasive.
A trial court has broad discretion to fashion an order of temporary spousal support, and R.C. 3105.18(C)(1) provides a court should order reasonable and appropriate temporary spousal support during the pendency of any divorce. It is the purpose of such orders to provide an economically disadvantaged spouse a means of maintaining herself or himself during the pendency of the action. See R.C. 3105.18(B). Moreover, Civ.R. 75(M) allows the trial court or magistrate to grant temporary spousal support during the pendency of the action for divorce.
Carolyn did request temporary spousal support on September 5, 1996 and her request was granted on January 16, 1997. At the earliest, the trial court could have retroactively awarded spousal support to the date that Carolyn requested the spousal support. See LeBlanc v. LeBlanc (July 17, 1998), Greene App. No. 97 CA 85, unreported. Thus, the trial court could have properly found James liable for spousal support from September 5, 1996 at the earliest following our remand. After reviewing the record, we cannot find that the trial court abused its discretion in ordering temporary spousal support after our remand given the purpose of temporary spousal support. See Cherry v. Cherry (1981), 66 Ohio St.2d 348.
The trial court apparently calculated James's spousal support obligation continuously from May 27, 1994. We find that this was error. As an accurate arrearage is calculable and must be performed by the trial court, we find that the trial court abused its discretion by miscalculating the amount owed by James. As the order of contempt was based in part by the amount of arrearages owed by James, we must find that the trial court abused its discretion in finding James in contempt. Accordingly, we sustain James's first assignment of error. We remand this matter for the trial court to calculate the amount of arrearages owed by James and then to determine if he was in contempt of the trial court's orders to pay temporary spousal support.
 ASSIGNMENT OF ERROR NO. II The trial court abused its discretion in establishing an arrearage inconsistent with the evidence of the amount due, and finding the Defendant-Appellant in contempt of Court for failing to pay spousal support when the Defendant-Appellant demonstrated an inability to pay, and the weight of the evidence did not support a finding of contempt.
As we reversed the trial court's order of contempt for the failure of James to pay spousal support, we find this assignment of error moot.
 ASSIGNMENT OF ERROR NO. III The trial court abused its discretion in finding Defendant-Appellant in contempt of Court for transferring a non-marital parcel of real estate and for cashing and applying income tax refund money to the second mortgage on the marital residence.
James contends that the trial court erred and abused its discretion in finding him in contempt when there did not exist any order restraining the parties from transferring, selling, utilizing, destroying or disposing of assets.
On May 5, 1994, the trial court filed an ex parte order that restrained the parties from selling, disposing, removing or encumbering any of the parties' property. As stated, the temporary orders merged into the January 16, 1996 final divorce decree. Colom, supra. Thus, the trial court should not have found James in contempt for violating the ex parte order as it did not exist after the final divorce decree when he transferred real estate on October 17, 1996 and cashed a tax refund check on August 30, 1996. Accordingly, we sustain James's third assignment of error and reverse the orders of contempt against James.
 ASSIGNMENT OF ERROR NO. IV The trial court abused its discretion by ordering the Defendant-Appellant to pay Plaintiff-Appellee's attorney fees when the same was against the manifest weight of the evidence.
As we reversed the orders of contempt, we reverse the award of attorney fees. To this extent, we find James's fourth assignment of error to have merit. Upon remand, after calculating James's spousal support obligation, the trial court will have to then consider the issues of contempt and attorney fees.
Accordingly, the judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.
Judgment reversed and remanded.
 SHAW, P.J., and BRYANT, J., concur.
[1] The delay was due to Carolyn's difficulties in obtaining a copy of the transcript.